The 4th District Appellate Court of the State of Illinois has now convened. The Honorable Amy C. Lannard presiding. The Court is taking up case number 423-0462, In Re Commitment of Dudley, People of the State of Illinois v. Jimmy Dudley. And Counsel for the Appellant, if you please state your name for the record. Your Honor, this is Jason Vincent, Counsel for the Appellant. For whatever reason, I'm seeing our background, but not me right now. Can you guys see me on your end? We cannot, Counsel. That's very strange, because I had seen myself there. I'll have my office manager. There I am, or was. There's my office manager. She's here. I apologize. I don't know why I'm picking her up. Do I need to move over there? No, just stand up for a minute. Okay, I'm standing up. Sorry, judges. Okay. Stand still. Okay, now sit down. Sitting down. There you go. Wow. Okay, should be good. Fair enough. Sorry about all that. Jason R. Vincent, Counsel for the Appellant. I am now, I believe, on your respective screens. You are, Counsel. Thank you. And Counsel for the Appellate. Yes, Your Honor. Madeline Callahan on behalf of Petitioner Appellate, the People of the State of Illinois. Counsel, you may proceed with your argument. Thank you, Your Honor. Justices, Ms. Callahan. Judge, we're present today in regards to a socially violent person's case, a sexually violent person's case, where our argument is that the court erred in permitting the state to present out-of-state and uncharged acts as substantive evidence. And the court erred in committing the appellate to institutional care in a secure facility. One of the issues that was brought up in the brief by the appellee was that the argument was forfeited. In particular, the testimony and opening statements, an argument against those things was forfeited due to the plain, due to the no objection being raised at that time. It's our position, as provided in the reply brief, that the plain error doctrine should apply so that the appellate can make these arguments today, having not made an objection at the time of. Primarily, the issue as far as the testimony that occurring during the opening statement and of the experts called by the state was that there was a motion in limine in place that the experts could use the information, sort of the broad picture of the information, and how they determined what they found to be the results of, if this person has a mental issue, a medical issue, things like that. Now, the problem we have is not so much that they were able to use the broad picture of things, but that at the actual hearing, the opening statement provides, at page 31 of our brief, a long paragraph where it's stating that the argument is that the doctors will testify as far as the different cases. In one of those cases that he was charged with sexual battery of a child under age 12, a child reported that he had touched her vagina on multiple occasions, so the doctors looked at that. It's interesting in terms of that is a true statement that the doctors did look at the broad picture, the uncharged misconduct, but in that particular situation, there was no a case that was preceded, and the charges were dismissed, so... What difference does that make? What difference does it make that they were uncharged or that the charges were dropped? I believe, Judge, it makes a significant difference in that they're relying upon a police report only, and the police report is what the police officer chose to write down from what someone else said. The fact that the state of Florida, whatever county, did not pursue the case is relevant to say, well, are these factual? Do they think that these are allegations that are true and the case should go forward against them on those allegations? This is sort of this weird situation where someone is telling a police officer that these happened, the actual authorities there take no action, but you have the evaluator years later saying, well, we're going to go ahead and call those things correct and proceed as far as that. The doctor, I think it's Sophia, I believe is how it's stated. She stated that it was, quote, not very common for people to be falsely accused of these offenses regarding sexual offenses. And then she stated that as a clinician, she did not need to have charges and convictions, just behaviors. And finally, that she stated, Dr. Sofias, that she typically considered police reports to be reliable information. So that really creates the problem in terms of them going, you know, on page 34 of our brief, she's testifying about specific things in police reports that, again, an individual told the police officer, police officer wrote it down, and then went no, apparently no further in terms of the state's attorney pursuing the case, or district attorney, and maybe in Florida, or anything like that. So I think it creates a real problem as far as what are the actual facts, and these are being stated in front of the jury. But counsel, if I may, experts may, you know, give opinion testimony that relies on facts and data, not an evidence if the underlying information is the type that's reasonably relied upon those experts, correct? That is correct, Your Honor. And experts may also diagnose paraphilia based on the person's behavior, right? That is also correct, Your Honor. So kind of following up with that, what specific case law do you have that directly supports the assertion that the trial court's decision to allow the state to present these uncharged out-of-state acts constitutes plain air? Because that's where we are, you've indicated, as you suggested in your reply brief, that that's the analysis the court would need to undertake here because of the forfeiture. Correct, Your Honor. I believe it's the Jackson case addresses that particular issue where it becomes less of a what did the individuals rely upon, which I agree is permissible. They are allowed to review what documents are given to them. The problem that I see is that when they're going in there and saying, you know, really digging into this happened and this happened, then this occurred, and then despite the jury instruction, the jury is hearing all of this as opposed to, yes, I reviewed documents from the state of Florida and then they could have come up with that assessment based upon that or I reviewed certain reports from Florida. The concern is that we're sort of taking the situation of the person who's doing the exam to say all of these things that they reviewed, which may or may not be true, but the jury is hearing from them. Then there is a reliability issue as far as the individual who's relying upon that, the evaluator, and what they're going to provide to the court because they're not providing to the court that, hey, it was an evaluation, I didn't speak with this individual, that the state did not pursue this case, but they're saying these things are, I reviewed a police report and it said this, this, and this. So that's, I believe, is the issue as far as sort of how much they went into it, not that they can't use it, but how much they went into the other cases in Florida in describing- And what does Jackson say that supports your position? Judge, I don't have it right in front of me. I think it did reference, though, it being a situation where it should not be a retrying of the case, which is what I really think this was almost seen as, as far as putting this evidence before this jury, as far as, you know, these are the things that he, well, arguably did or did not do. Now, so let us suppose that an examining psychiatrist or psychologist reviews the reports from a mental health facility where the individual is being detained for the moment. And those reports filed regarding that individual's behavior towards staff, particularly toward younger staff. Would you have to call every one of those staff members to testify about it, or would the examining psychiatrist or psychologist be permitted to review those reports? There's, I have no issue as far as the psychologist individual who's preparing the document to be allowed full access as far as all the reports. I'm not so much saying that the, you know, the police officer who took the report in Florida, however many years ago, has to appear or anything like that. I'm just saying in terms of the information that's given to the jury. So in your example, the individual has done certain things towards members of the staff. That could be testified to as far as, you know, I'm aware of a report where, where some, you know, blank person did something to this. My concern is where if they spent, you know, three minutes going through, you know, he did this, then he did this, then he held her down. Then he did this as far as the information that's being relied upon or given to the jury. It was originally thought that the defendant, or in this case, the respondent, touched a child's vagina. What more do I know than that? It was reported. Did they found, did they, were they told that the charges were never filed or were dropped? In most cases, there was a lot of different, I guess, issues as far as past conduct. So I think in some cases it was made clear after the description that, you know, X event was not pursued or did not come to charge of it. But in other things like the opening statement, it just says- Opening statement is not evidence. Understood, Your Honor. But then it starts with the opening statement, and it continues with the testimony of the experts in terms of how, how much they're going into the facts of- How descriptive was it? Judge, I have the descriptions at, um, page 32 of my brief. Dr. Saflias testified there are numerous reports. In 2012, there was a police report that indicated that a girl between ages six and eight said on two occasions, respondent woke her up and forced her to perform oral sex on him. Respondent's daughter told the police that for a period of three years, she was at 11 at the time, for a period of three years, respondent forced her to engage in sexual intercourse with him hundreds of times. There was, after an incident, the Department of Family Services of Florida had the children living with someone else. Um, so it's going into, just in that paragraph, 102 different plus times of there being sexual misconduct that they're saying is, you know, happened in Florida, that they're using to determine whether or not this individual, um, you know, is a sexually violent person and things like that. So that, that's my overall concern as far as it was just a reference to, there's a report that he, he did, uh, you know, some report out of Florida, X, that something happened. It's just the amount of times that it's been referred to. And then I think what is interesting in the case is at the closing argument of the state in the disposition... Counsel, in your brief, in your brief, you also say that the doctor stated that as a clinician, she did not need to have charges and convictions, just behaviors, and stated that she typically considers police reports to be reliable information. And they both indicated that this is the type of information that they do rely on and giving their expert opinions. What case authority do you have that says that's wrong? Judge, I don't think that is inherently wrong as far as that. But I think when you say I rely upon police reports, but then her own analysis doesn't take into account that the police did not choose to move forward with those allegations. So it's an interesting concept of I'm going to believe here what's written by the police officer, but the institution, the police, the state's attorney, district attorney, whatever in Florida, did not choose to pursue that. And I think that's a concern when you're saying we're going to rely... But was that brought out on cross-examination? I don't think that was properly addressed on cross-examination to the point of it's already been told to the jury in terms of he's got police reports that say, you know, all of this. And so it's sort of like trying to unring the bell in terms of the situation. But that's what cross-examination is in most instances, because you've already heard the testimony on direct. And so now you're attacking it on cross. Agreed, Your Honor. I agree. I just didn't think it was... So it wasn't cross-examined on, and you don't claim that there's any error by counsel not cross-examining, correct? Judge, I do believe in my reprieve brief, I mentioned there was an issue as far as performance using the Strickland v. Washington standard. Okay. But I mean, you started... That's in your reply brief, and this is what you're attacking right out of the box in your argument, as if this was the crux of your claim. If it's that important, why wasn't it raised earlier? Judge, in this particular case, I think what we were trying to do was trying to go through what happened at the trial. I perhaps could have added that into the initial brief, but I think the concern as far as the court allowing the... There was a jury instruction. The information was allowed in, and I believe that the attorney probably should have done more. He certainly should have objected at the time as far as the information coming in, you know, our argument being that it's going beyond what the evaluator... Until I brought it up, you've not mentioned there being an issue with the attorney. You've said that it was wrong that they be allowed to testify to this. Correct. Our initial brief was that the court had error in that happening, and that's when I started out saying that the plain error doctrine should apply because of the defense counsel's non-objection at the proceeding, but I would point out at the dispositional hearing that the state... Counsel, if I may, before we go to that, I want to clarify these questions with regards to cross-examination. Sir, are you suggesting that Dr. Saflias didn't concede on cross-examination that the respondent had only been convicted of one sexual offense? No. I mean, that was brought up, correct? Yes. And didn't Dr. Saflias also agree that the respondent was never charged with touching a nine-year-old child and that there were no other sex crime convictions in respondent's criminal history? That is correct. The problem is the time that's spent... Well, but I just want to be clear because it sounded to me in your response to Justice DeArmond, you were suggesting this had not been brought out on cross-examination, and I followed that with Dr. Saflias also acknowledged the state did not pursue the case for which respondent was arrested and charged in 2016. So it seems to me during cross-examination that those matters were addressed by counsel. Yes. I would agree that after having gone through the... These are the events. This is what the person testified to that on cross-examination, Dr. Saflias did say, yes, these things did not end in a charge being filed or conviction. So that was... And then she also admitted that she was using an abandoned charge and another incident respondent was never charged for in her analysis or evaluation, if you will, correct? That's correct, Your Honor. Okay. Thank you. Thank you, Your Honor. So now I'm kind of fast-forwarding to the dispositional hearing, and this is the closing argument of the state. I agree. I understand it's not evidence, but she tells the court, it is our position based upon the records that Mr. Dudley has committed sexual offenses against a number of young girls between the ages of six and 13. And based upon that pattern in those reports, he has a clear pattern of sexually abusing and assaulting children that are living in his or close to him. And so he asked that you take that into account in your verdict. The jury took that into account in their verdict in finding him to be a sexually violent person. So I think right there, Judge, we have a situation where the state is saying that they're taking this evidence into account when they're deciding that the individual is a overall case as far as the information that's presented to the jury, even with there being an instruction. The second issue that I had brought was there was an issue in the court committing the appellant to institutional care in a facility. My primary concern on that particular issue is there was really no testimony about any place other there being a secure facility for this individual to go. It wasn't until the redirect at the commitment hearing where a different or alternative thing than being a secure facility was really addressed. That did not provide the court with adequate information to be able to make a decision so that in terms of what the future of this individual would be, it would be the least restrictive. Instead, it was more or less handled, this person needs to be in a facility without there being a discussion about the liberty service, I think is what it's called, that according to the state does a good job. Counsel, thank you. That does conclude your time. You will have time in rebuttal. And counsel, you may proceed with your argument. Thank you, Your Honor. Good morning, Your Honors, Mr. Vincent, and may it please the court. This court should affirm the trial court's finding that Respondent is an SVP and committing him to continued treatment at the DHS facility for two reasons. First, because as Respondent concedes, he forfeited his challenges to the people's opening statements and expert testimony, and he cannot satisfy the extremely narrow plain error exception to the typical forfeiture rules. And second, because the trial court did not abuse its discretion in ordering Respondent to continue treatment at the DHS facility. But before I move into those pieces of the argument, I would like to pick up close to where the court left off, namely with Respondent's ineffective assistance of trial counsel argument, which we would know is waived because it was brought for the first time in a reply brief. And also, under Rule 341H7, any argument not only cannot be brought for the first time in a reply brief, but also an oral argument. And our understanding is that in his reply brief, Respondent raised an ineffective assistance of trial counsel claim predicated on trial counsel's failure to object during trial, but not predicated on any issue concerning failure to sufficiently cross-examine witnesses. So that particular IAC argument was raised for the first time today in court. And therefore, any and all ineffective assistance of trial counsel claims were not raised in the initial briefing and thus have been waived. But turning to my first point, as Respondent conceded, both of his challenges to the opening statements and the people's expert testimony were forfeited. And therefore, the only way that they can be heard on review is under the narrow plain error exception. And in order to satisfy that narrow plain error exception, Respondent first and foremost needs to establish that there was a clear or obvious error. And first, there was no clear obvious error in the expert testimony because, as the court noted, experts may testify about previous sexual misconduct even if that misconduct did not result in any charge or conviction. And as the court alluded to, Respondent has not cited any case law, and the people are not aware of any cases where the Illinois Appellate Court held that an expert inadmissibly testified about prior conduct or went beyond the bounds of what was permitted. And in fact, this court's holding an in-read attention of Isbell is very instructive here because there, this court held that an expert's detailed testimony about an unadjudicated rape allegation was admissible despite the lack of any limiting instruction because there, the prosecutor and the expert established that the expert was relying on the substance of those allegations in reaching their conclusions. And this case is, in fact, far less concerning than Isbell because here, the court repeated a limiting instruction on three separate occasions, including once before each expert testified on behalf of the state, explaining to the jury that the allegations that the experts were relying on were not to be considered as substantive evidence, but rather solely as the expert's opinion, the basis of expert opinion. And therefore, we don't even have the issue in Isbell that was present insofar as a lack of limiting instruction is concerned. And here, much like in Isbell, the experts and the prosecutor established that these allegations were simply serving as the basis of expert opinion because both experts testified that they relied both on police reports and child protective services reports to bolster their conclusions. And Dr. Swear explained that experts in their field regularly rely on those kinds of reports and allegations. Dr. Splies explained that the specifics of the alleged offences, including the similarities between the alleged acts, established a, quote, pattern of behavior, which supported her pedophilic diagnosis. And Dr. Swear similarly explained that the similarities in the acts, namely the violence, force and manipulation used in each of the alleged acts, supported his diagnosis of paraphilic disorder. And so therefore, this case is very akin to in recommitment of more where the courts held, where the court held that an expert's detailed accounts of misconduct was permissible because they relied on the underlying behaviors manifested during those alleged misconduct instances to reach their diagnoses. Similarly, there was no clear or error in the people's opening statements because prosecutors have a wide latitude in giving their opening statements and they are permitted to argue the facts of sexual offenses as relied on by experts. Here, the prosecutor first explained that Drs. Splies and Swear were going to testify that respondent has pedophilic disorder and antisocial personality disorder, and then explained that the relied on police reports from these reported instances of misconduct in reaching those diagnoses. And in fact, the only details they gave regarding any of the four alleged offenses was that, quote, a little girl reported that he touched her vagina on multiple occasions. They followed this relatively vague description of one of the allegations immediately by explaining that the doctors looked at, quote, all of the factors, including but not limited to that one allegation in reaching their conclusions. This case is entirely dissimilar from in recommitment of Gavin, which respondent cited in his brief, because there the prosecutor called the allegations at issue, quote, facts and evidence, said that the experts were going to, quote, show and tell the jury about those facts and evidence, and the opening statements were significantly more detailed than anything in the opening statements here regarding the allegations at issue. And therefore, this case is much more akin to in recommitment of Tenorio and in recommitment of Jackson, because here the prosecutors clearly established that the allegations were the basis of expert opinion by sandwiching their one vague description of only one of the four allegations in between sentences, explaining that this was something experts relied on and looked at when reaching their respective diagnoses. However, even if respondent could establish that there was clear or obvious error in opening statements or expert testimony, it still would not satisfy plain error review, because as respondent conceded in his reply brief, this is not, none of the alleged errors are structural errors, so it does not satisfy second-pronged plain error. And more relevant to this case, it does not satisfy first-pronged plain error, because the evidence was not so closely balanced that the verdict could have reasonably come from the purported errors as opposed to from the evidence itself. Because here, two different doctors diagnosed respondent with two different qualifying mental disorders, including pedophilia and paraphilia, and both testified that respondent was substantially likely to sexually re-offend. Both testified not only that respondent had numerous allegations of sexual abuse of young girls, that had, three of which had been deemed credible by child protective services, and one of which did result in a charge that was ultimately dropped for whatever reason, but they also explained that respondent had not undergone any sex offender treatment at the time of trial, which would mitigate his risk of re-offending, and both determined that his risk of re-offending was above average. Additionally, both doctors testified that respondent failed to show any remorse during his interviews with them, and that he in fact made several statements indicating a seriously warped view of the world and of sex, including, quote, a man should have sex whenever he wants it, and that, quote, if a child does not resist when an adult made sexual advances towards them, it means that they want the behavior to continue. The fact that respondent called one expert who happened to disagree with these conclusions and who did not consider wide swaths of the evidence that the state's, or of the reports that the state's experts considered, does not necessarily render the evidence so closely balanced that it satisfies first-pronged plain error review, and that says nothing of the fact that respondent's own expert testified that he, quote, had concerns about respondent. And so, for these reasons, respondent's forfeited claims do not satisfy plain error review, and the trial court's determination that he was an SVP should be affirmed. And now, moving on to the dispositional hearing, the trial court's determination that respondent needs to be treated in a secure facility was not so arbitrary or fanciful that it constituted an abuse of discretion. Our understanding is that respondent primarily argues that the court lacked enough information to properly consider what arrangements conditional release imposes, but that was discussed at the dispositional hearing. Dr. Swear testified that conditional release imposes a variety of conditions, including but not limited to court monitoring, but that respondent's mental condition would make him, quote, resistant to those various conditions, primarily due to his personality disorder. The court, in fact, expressly asked Dr. Swear if the treatment facility presented more treatment than any community, and if it mattered where exactly respondent would be released, to which Dr. Swear responded that the secure facility, quote, always offers more treatment and always offers, quote, considerably greater breadth of treatment, regardless of which community respondent was released into or what treatment, conditional release program he participated in. Additionally, Dr. Swear testified on cross-examination that respondent would admittedly have access to substance abuse treatment in the community, but that he had never seen anyone participate in the kinds of anger management treatment while on conditional release that he believed respondent was required to participate in in order to mitigate his above risk of re-offending. Additionally, I would just note that respondent was permitted to call whomever he wanted at the dispositional hearing in order to bring testimony about what conditions, if any, family or friends, for example, would be providing were he released, and he did not call any witnesses. So there was not an opportunity, he had an opportunity to explain and provide this kind of information to the court, and he simply opted not to do so. And the fact that Dr. Swear didn't provide specific details about what Liberty Health specifically included as part of their conditional release program was not necessary for the court to appropriately exercise its discretion to determine that what the secure facility provides, which includes a five-step immersive treatment program with counseling programs, including anger management, and which he said is always a greater breadth of treatment than any community could provide, that doesn't deem that testimony an abuse of discretion to make the finding that the court made. I would also just note that the dispositional hearing and the trial adjudicating respondent and SVP are two entirely separate proceedings, and so whatever the prosecutor may or may not have said during that dispositional hearing about the previous uncharged Floridian allegations is of no import on whether or not there was clear or obvious error during the actual trial phase and the people's opening statements at trial or the expert opinion at trial. They are entirely distinct issues, and they don't have any bearing on the legal analysis or the plain error analysis in either case. And so for these reasons, if the court does not have any questions, we would respectfully ask this court to affirm the trial court's finding that respondent is an SVP and committing him to continue treatment at the TDF facility. Thank you. Thank you, counsel. Counsel, you may proceed with your rebuttal argument. Judge, I have no further rebuttal. I'll stand on my original argument. Thank you. The court will take this matter under advisement, and the court stands in recess.